**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
                                                       :
JOSEPH P. LASALA, as assignee of                       :
Fatbrain.com, Inc.,                                    :
                                                       :        **OPINION AND ORDER**
                                                       :
                         Plaintiffs,                   :        04 Civ. 09237 (SAS)
                                                       :
        - against -                                    :
                                                       :
NEEDHAM & COMPANY, INC.,                                :
J.P. MORGAN SECURITIES, INC., and   :
MORGAN STANLEY,                                         :
                                                       :
                         Defendants.                   :
-------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

# I.   BACKGROUND

### A.  Background of the IPO Litigation

This case, and the fifty-four other cases governed by this Opinion by

stipulation of the parties, is an offshoot of the hundreds of actions brought by

investors against numerous underwriters and issuers of stock, coordinated in this

court as *In re Initial Public Offering Securities Litigation* ("the IPO Litigation").[1]

---

[1]      *See* Order, *In re Initial Public Offering Sec. Litig.*, 21 MC 92 (Aug.
9, 2001).  This Court subsequently consolidated the lawsuits by Issuer-defendant,
which resulted in 309 consolidated cases that are being coordinated in the IPO

In those actions, plaintiffs seek recovery for securities fraud pursuant to the

Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of

1934 (the "Exchange Act").

The alleged scheme is described at length in my February 19, 2003

Opinion denying defendants' motion to dismiss.[2]  Familiarity with that Opinion is

assumed.  In short, plaintiffs allege that defendants fraudulently inflated the share

prices of 310 technology stocks during and after their initial public offerings

("IPOs") through an elaborate scheme characterized by tie-in agreements,

undisclosed compensation and analyst conflicts.  According to plaintiffs, the

investment banks (the "Underwriters") required investors seeking allocations in the

IPOs to participate in the alleged laddering scheme.  The companies going public

(the "Issuers") allegedly profited from the scheme by taking advantage of the

artificially inflated stock resulting from the laddering to raise capital, enter into

stock-based transactions, or sell their individual holdings at high prices. Plaintiffs

allege that the value of their holdings plummeted when this artificial inflation

dissipated.

_____

litigation.

    [2]    *See In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281,
298-321 (S.D.N.Y. 2003).

After extensive negotiations, plaintiffs agreed to a settlement with the Issuers (but not the Underwriters) in 298 of the cases coordinated in the IPO Litigation.  This Court preliminarily approved the settlement in February 2005.[3]  As part of this settlement, which is awaiting final approval from this Court, the Issuers agreed to assign their interest in all claims against the Underwriters for "Excess Compensation" to a Litigation Trust, to be created upon final approval of the settlement and to be represented by plaintiffs' counsel.[4]  These claims are hereinafter referred to as the "Assigned Claims."  The Issuers retain their claims against the Underwriters for underpricing, contribution, indemnification, or antitrust violations, but agree that they will not assert such claims except in certain defined circumstances.[5]

**B.  The "LaSala Actions"**

Of the fifty-five Underwriters named as defendants in the IPO litigation, all but a handful have entered into agreements with the plaintiffs which toll

---

[3]     *See generally In re Initial Public Offering Sec. Litig.*, 226 F.R.D. 186 (S.D.N.Y. 2005).

[4]     *See* Stipulation and Agreement of Settlement with Defendant Issuers and Individuals ("Issuers Settlement") ¶¶ 12-14, Ex. D to 2/10/04 Declaration of Steven A. Engel, Esq., counsel to Morgan Stanley ("Engel Decl.") at 17-19.

[5]     *See* Issuers Settlement ¶ 1(c).

the applicable statute of limitations for the Assigned Claims until the Issuers

Settlement is approved by this court.[6]  The Underwriters who have not consented

to such a tolling agreement are J.P. Morgan Securities, Inc., Needham & Company,

Inc., Morgan Stanley, Allen & Company, Inc., E*Trade Securities, and Prudential

Equity Group, LLC (the "Non-Tolling Underwriters").

In order to ensure that the statute of limitations on the Assigned

Claims does not expire,[7] the plaintiffs and the Issuers have arranged to assign each

Issuer's Assigned Claims against the Non-Tolling Underwriters to Joseph LaSala, a

New Jersey resident who (subject to court approval) will become the Litigation

Trustee once the Issuers Settlement is approved.[8]  But these assignments are

---

[6]      *See* 4/13/05 Hearing Transcript at 25-26.

[7]      New York has a six-year statute of limitations for breach of contract
and unjust enrichment claims.  *See Francis v. Blaikie Group*, 372 F. Supp. 2d 741,
744 n. 6 (S.D.N.Y. 2005) (breach of contract, citing N.Y. C.P.L.R. § 213(2));
*Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 518 (2d Cir. 2001) (unjust
enrichment, citing N.Y. C.P.L.R. § 213(1)).  The statute of limitations for breach of
fiduciary duty depends on whether the plaintiff seeks equitable relief (six years) or
monetary relief (three years).  *See Cooper v. Parsky*, 140 F.3d 433, 440-41 (2d Cir.
1998).  New York law applies to the Assigned Claims by virtue of a choice-of-law
provision in the Underwriting Agreement that is at the heart of the claims.  *See*
Computer Literacy, Inc. Common Stock Underwriting Agreement dated November
19, 1998 ("Underwriting Agreement") at 20-21 (section 16), Ex. A to Engel Decl.

[8]      *See* Stipulation and Order Governing All Present and Future "LaSala"
Actions ("LaSala Stip") at 2.

conditional and for an extremely limited purpose.  Specifically, these assignments

give LaSala the power to do only two things: 1) file a separate action for each

Issuer who has assigned claims to him; and 2) immediately seek a stay of that

action.[9]  Moreover, on the occurrence of any one of five specified events, his

assignment automatically reverts to the assignor-Issuer, or to the Litigation Trust

after approval of the IPO Issuers Settlement.[10]

        In accordance with his conditional assignments, LaSala has filed

numerous actions in this Court ("LaSala Actions").[11]  Each action is the result of a

conditional assignment of claims from a different Issuer, and each action names as

defendants one or more of the Non-Tolling Underwriters.  In order to avoid

---

[9]    *See* Conditional Assignment of Claims between Joseph LaSala and
Issuer-defendant Fatbrain.com's successor-in-interest, Barnesandnoble.com,
entered into November 15, 2004 ¶¶ 4-6 ("Conditional Assignment"), Ex. 2 to
11/19/04 Affidavit of Alexander H. Schmidt, counsel for LaSala ("Schmidt Aff.")
at 1-2.

[10]   Conditional Assignment ¶¶ 5-6.  Specifically, LaSala's interest in each
Issuer's claims reverts to the assignor-Issuer if: 1) LaSala does not move for a stay
at the outset of the litigation; 2) if this court denies the stay application; 3) if this
court declines to approve the Issuer Settlement; or 4) if the assignor-Issuer goes
bankrupt before the Issuers Settlement is approved.  Additionally, if this court
approves LaSala's stay application and then approves the Issuers Settlement, the
claims are automatically re-assigned to the Litigation Trust created by the Issuers
Settlement.

[11]   *See* Appendix I for a list of pending LaSala Actions.

expiration of the statute of limitations, LaSala has filed each action shortly before

the six-year anniversary of the IPO of the Issuer-assignor for that action.[12]

The parties have collectively filed three motions in each LaSala Action.

First, LaSala filed a complaint together with a motion to stay the action he had just

initiated. Then, the defendants in each case filed a motion to dismiss for lack of

subject-matter jurisdiction, as well as for failure to state a claim upon which relief

can be granted.[13] Finally, in responding to the motion to dismiss, LaSala filed a

---

[12] *See* Issuers Settlement ¶ 16 ("If, prior to the [final approval of the Issuers Settlement], the [IPO Litigation Plaintiffs] reasonably believe[] that the statute of limitations for an Issuer's Assigned Claim is at risk of expiring, and a tolling agreement is not in effect with respect to a given Underwriter subject to said Assigned Claim, the Plaintiffs' Executive Committee and the Issuers shall promptly seek the District Court's approval in the IPO Litigation to serve and file the Assigned Claims in the appropriate Action, subject to an immediate stay of the prosecution of such Claims once filed."). The Plaintiffs instead chose a procedure which involved the filing of over fifty separate civil actions. *See* Plaintiff's Reply Memorandum of Law in Further Support of Plaintiff's Motion to Stay this Action ("Pl. Reply") at 3 n. 5 ("the Issuers and plaintiffs have modified [paragraph 16 of the Settlement] in practice by utilizing the more efficient procedure of filing separate plenary actions to preserve the claims in anticipation of seeking Court approval to consolidate the *LaSala* actions into the appropriate *In re IPO* actions at a later date.").

[13] In this motion, defendants first question LaSala's standing, arguing that he lacks a sufficient personal interest in this lawsuit. *See* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Mem.") at 7-10. Defendants also argue that this court lacks jurisdiction, both because Fatbrain (a non-diverse party) should be considered the real party in interest, and because the assignment to LaSala should be considered a collusive assignment made solely to create diversity jurisdiction. *See id.* at 10-14.

cross-motion to consolidate each LaSala Action with the IPO Litigation.[14]  This

Opinion relates only to LaSala's request for a stay of his action.

While each LaSala Action involves the IPO of a different Issuer, and

different combinations of Non-Tolling Underwriters, the pending motions in each

_____

Defendants also assert that LaSala's claim should be dismissed under
Fed. R. Civ. P. 12(b)(6) for "failing to state any claim upon which relief can be
granted."  According to defendants, LaSala's breach of contract claim must be
dismissed because LaSala cannot identify any term of the underwriting agreement
that was breached, and because LaSala's complaint has no theory of damages.  *See*
Def. Mem. at 16-21.  Defendants also claim that LaSala's unjust enrichment claim is
invalid because he does not plead a necessary allegation that defendants'
enrichment was at plaintiff's expense.  *See id.* at 22.  Finally, defendants assert that
the fiduciary duty claim is already barred by New York's three-year statute of
limitations.  *See id.* at 22-24.

[14]    *See generally* Plaintiffs' Memorandum of Law in Opposition to
Defendants' Motion to Dismiss and in Support of Plaintiffs' Cross-Motion for
Consolidation ("Pl. Consol. Mem.").  The gist of Plaintiffs' arguments for
consolidation is that, to the extent that the court believes that it does not have
diversity jurisdiction over the LaSala Actions, such a defect can be cured by
consolidating the LaSala Actions into the IPO Litigation.  *See id.* at 8-10.  After
consolidation, according to LaSala's theory, this Court could exercise
supplemental jurisdiction over the LaSala claims as "assigned cross-claims" that the
Issuers *could have brought* as part of the IPO Litigation, arising from the same
common nucleus of operative fact as the federal securities claims at issue in the
earlier proceedings.  *See id.* at 5-7; *see also id.* at 7-8 ("the underwriters' only real
objection to consolidation appears to be a contention that the Court lost its subject
matter jurisdiction over the Issuers' assigned prospective cross-claims when the
Assigned Claims were asserted in the . . . *LaSala* actions rather than in the *IPO*
actions. [Defendants'] objection, in the context of these proceedings, is a highly
hyper-technical one that elevates form over substance").

LaSala Action involve identical legal issues.   Accordingly, the parties stipulated

that the resolution of the pending motions in *LaSala (as assignee for*

*Fatbrain.com) v. Needham & Co.*, 04 Civ. 9237, would govern the disposition of

the identical motions in all of the pending LaSala Actions, and any future LaSala

Actions that raise the same issues.[15]   Therefore, this Opinion will resolve the

Motion to Stay now pending in all LaSala Actions covered by the Stipulation.[16]

### C.  Background of the "Fatbrain.com" LaSala Action

Joseph LaSala is a New Jersey resident, who had no connection to the

events giving rise to the Complaint's allegations prior to receiving his assignment of

---

[15]     *See* LaSala Stip ¶¶ 1-2; *see also* Appendix I for a list of cases governed by this Opinion..  The Stipulation also applies to any future action filed by LaSala against one or more of the Non-Tolling Underwriters which meets the following criteria: 1) LaSala receives a "conditional assignment" of claims from an Issuer Defendant in the IPO Litigation; where 2) the Issuer is a citizen of the same State as one or more of the Underwriter Defendants; and 3) when the action is filed within six years of the IPO that is the subject of the complaint.  *See* LaSala Stip ¶ 2.

[15]     If LaSala files a future action that does not meet these criteria, "either LaSala or the Defendants may file a supplemental brief to explain why the resolution of *Fatbrain* should not govern the future LaSala action."  *Id.* ¶ 6.  In such a case, the non-moving party will be allowed to file a response brief, with a reply from the moving party.  *See id.*

[16]     There is one LaSala Action that will not be governed by this Opinion.  *LaSala (as assignee of Conextant.com) v. E*Trade Securities, Inc.*, 05 Civ. 5869, involves a Non-Tolling Underwriter that did not sign the Stipulation.  In fact, E*Trade has not yet filed an answer or otherwise responded in that action.

the claims.[17]  The assignor of these claims, Fatbrain.com ("Fatbrain"), was at the time of its IPO "an online retailer of information resources focused on the technical professional."[18]  Although LaSala's complaint does not mention Fatbrain's corporate citizenship, at the time of its IPO it was registered in Delaware.[19]

The defendants in this case are three of the Non-Tolling Underwriters. Needham & Co., Inc. ("Needham") was a co-lead managing underwriter for the Fatbrain IPO, receiving and reselling Fatbrain stock as part of that offering.[20]  J.P. Morgan Securities, Inc. ("J.P. Morgan") and Morgan Stanley were also members of the underwriting syndicate for the IPO.[21]  All three defendants are Delaware corporations, with principal executive offices in New York City.[22]  LaSala invokes this court's jurisdiction on the basis of diversity of citizenship between himself (New Jersey) and the defendants (Delaware-registered corporations principally

---

[17]     *See* First Amended Complaint ("Complaint") ¶ 5.

[18]     *Id.* ¶ 11.  Fatbrain was previously known as Computer Literacy, Inc., and has since been acquired by BarnesandNoble.com LLC.  *See id.*

[19]     *See* Underwriting Agreement at 1.

[20]     *See* Complaint ¶ 6.

[21]     *See id.* ¶¶ 7-8.

[22]     *See id.* ¶¶ 6-8.

doing business in New York).[23]

On or about November 20, 1998, Fatbrain entered into a "firm commitment underwriting" with Defendants.[24]  The defendants contracted to buy three million shares, which they would then sell to investors in an IPO.[25]  In connection with this underwriting, LaSala alleges that the defendants received "Excessive Compensation" as a result of agreements extracted from their customers (who purchased Fatbrain shares from the underwriters on the IPO and in the aftermarket).  Specifically, LaSala alleges that customers were forced to "kick back" a portion of the profits they derived through participation in the IPO through: 1) payment of inflated brokerage commissions; 2) transactions in otherwise-

---

[23]    *See id.* ¶ 9.  As noted above, LaSala advances an alternative theory of jurisdiction, asserting that supplemental jurisdiction can be exercised over these New York claims because the claims should be considered "assigned-cross claims" of the Issuers, based on a common nucleus of operative fact with the federal securities claims in the IPO Litigation.  *See* Pl. Consol. Mem. at 5-11, 15; Plaintiff's Reply Memorandum of Law in Further Support of Plaintiff's Cross-Motion for Consolidation at 1-5; *see also supra* note 14.

[24]    Complaint ¶12.  A firm commitment underwriting takes place when the underwriters purchase the securities directly from the issuer, and then resell the securities to investors.  Accordingly, even if the underwriters had failed to sell the stock, Fatbrain would still receive the agreed-upon sum for the shares.  *See In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d at 309 n. 30 (describing a firm commitment underwriting).

[25]    *See* Complaint ¶ 12.

-10-

unrelated securities made through or at the direction of a defendant merely to

generate commissions; and 3) purchases of, and payments of commissions for,

stock in future offerings underwritten by one or more of the defendants, including

"follow-on" offerings of Fatbrain stock.[26]  Based on these facts, LaSala pleads

three causes of action — breach of contract,[27] unjust enrichment,[28] and breach of

fiduciary duty.[29]

LaSala filed this action pursuant to the conditional assignment for the

purpose of obtaining a stay and avoiding the expiration of the statute of limitations

for these Assigned Claims.[30]  A failure to obtain a stay voids LaSala's

assignment.[31]  As it is now more than six years since the Fatbrain IPO, the statute

of limitations for the Assigned Claims has now expired.  LaSala argues that a stay is

---

[26]     *See id.* ¶ 14.

[27]     *See id.* ¶¶ 16-21.

[28]     *See id.* ¶¶ 22-27.

[29]     *See id.* ¶¶ 28-31.

[30]     *See* Plaintiff's Memorandum of Law in Support of Plaintiff's Motion
to Stay this Action ("Pl. Mem.") at 2; Conditional Assignment ¶ 4.  **Plaintiff asserts,
and defendants do not dispute, that Fatbrain's causes of action accrued on
November 20, 1998, the date of the Fatbrain IPO.**  *See* **Complaint ¶ 2.  The
Complaint in this action was filed on November 19, 2004.**

[31]     *See* Conditional Assignment ¶ 5.

necessary "to prevent the harm that may result if the statutes of limitations [for the Assigned Claims] expire."[32]

Defendants respond that any hardship is self-imposed, because the parties to the Issuers Settlement chose to wait to file these claims until the end of the limitations period, and also chose the very limited structure of the conditional assignment to LaSala.[33] As such, defendants assert, this is not the sort of hardship that would justify denying defendants "the right to a prompt resolution of their claims."[34] Similarly, defendants argue that granting a stay would contravene the judicial policy requiring plaintiffs to diligently prosecute claims, [35] characterizing this motion as "essentially a request that this Court give the plaintiff a license *not* to diligently prosecute this action."[36]

---

[32]   Pl. Mem. at 2.

[33]   *See* Defendants' Opposition to Plaintiff's Motion to Stay this Action ("Def. Opp.") at 3.

[34]   *Id.* at 4.  Elaborating on this point, defendants assert that "LaSala should not be allowed to charge Defendants with unlawful conduct, force the Defendants to report to the public a threat of liability, but then deprive Defendants of the chance to address these charges promptly."  *Id.* at 5.

[35]   *See id.* at 4-5 (citing Fed. R. Civ. P. 41(b) (which provides for dismissal based on a  plaintiff's failure to prosecute)).

[36]   Def. Opp. at 5 (emphasis in original).

## II.    LEGAL STANDARD

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants."[37]  It follows that the decision whether to issue a stay is "firmly within a district court's discretion."[38]  There are several reasons why a court might decide to stay proceedings in a lawsuit.[39]  For example, a court might, in the interest of judicial economy, enter a stay pending the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action that is to

---

[37]    *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936).  *Accord WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997) (quoting *Landis*).

[38]    *American Shipping Line, Inc. v. Massan Shipping Indus.*, 885 F. Supp. 499, 502 (S.D.N.Y. 1995).

[39]    *See* 5C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 1360 (noting that a district court may grant a stay "when a similar action is pending in another court," or "when remitting the matter to arbitration is appropriate").  Other situations favoring a stay include those where a higher court is close to settling an issue of law bearing on the action, *see Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 472 (2d Cir. 1979), or where the interests of justice require a stay of civil proceedings pending the outcome of related or parallel criminal proceedings.  *See Kashi v. Gratos*, 790 F.2d 1050, 1057 (2d Cir. 1986) (citation omitted); *Jackson v. Johnson*, 985 F. Supp. 422, 424 (S.D.N.Y. 1997) (same).

be stayed.[40]

To be sure, the movant "bears the burden of establishing its need" for such a stay.[41]  In particular, "if there is even a fair possibility that the stay for which he prays will work damage to some one else," the movant "must make out a clear case of hardship or inequity in being required to go forward"[42] The factors considered in deciding whether to grant a stay were summarized in *Kappel v. Comfort*:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.[43]

These *Kappel* factors have been applied, inter alia, "to stay a federal action in light of a concurrently pending federal action (either because the claim

---

[40]     *See, e.g., Leyva v. Certified Grocers of Cal.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (case remanded so district court could determine whether lawsuit should be stayed pending arbitration); *Goldstein v. Time Warner N.Y. City Cable Group*, 3 F. Supp. 2d 423, 438 (S.D.N.Y. 1998) (citing *Leyva*).

[41]     *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

[42]     *Katz v. Feinberg*, No. 99 Civ. 11705, 2001 WL 1132018, at *2 (S.D.N.Y. Sept. 24, 2001) (quoting *Landis*, 299 U.S. at 255).

[43]     *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (quoting *Volmar Distribs. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)).

arises from the same nucleus of facts or because the pending action would resolve a controlling point of law)."[44] In balancing these *Kappel* factors on a case-by-case basis, "the basic goal is to avoid prejudice."[45]

## III.    DISCUSSION

After considering the five *Kappel* factors, I find that a stay of the LaSala Actions until the Issuers Settlement is approved or rejected is warranted. The interests of non-parties to this litigation (specifically the prospective beneficiaries of the Litigation Trust), the public interest, and the courts' interest outweigh the defendants' nonspecific claims of prejudice resulting from a stay.

As an initial matter, I note that the first *Kappel* factor (weighing plaintiff's interest in proceeding against the prejudice it would suffer if the action is stayed) does not apply because here the plaintiff is requesting the stay.[46]  Courts are generally reluctant to stay proceedings because they are concerned with

---

[44]     *SST Global Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 455 (S.D.N.Y. 2003).

[45]     *Kappel*, 914 F. Supp. at 1058.

[46]     *See Grand River Enters. Six Nations, Ltd. v. Pryor*, No. 02 Civ. 5068, 2004 WL 2480433, at *3 (S.D.N.Y. Nov. 3, 2004) (declining to apply first factor when plaintiffs requested stay).

vindicating the *plaintiff's* right to proceed with its case.[47] **Therefore, when a plaintiff seeks a stay, a court is not concerned with plaintiff's need to vindicate its rights.**

### A. The *Kappel* Factors Favor Granting a Stay

Three of the four remaining *Kappel* factors militate in favor of granting a stay. First, and most importantly, a stay protects the interests of many non-parties to this litigation (factor four) — the intended beneficiaries of the Litigation Trust that would be created by final approval of the Issuers Settlement. The statute of limitations continues to run on all the Issuers' Assigned Claims pending court approval of the Issuers Settlement. However, the Litigation Trust cannot be created until mid-2006 at the earliest, after notice is sent to class members and a

---

[47]    *See An Giang Agric. & Food Imp. Exp. Co. v. United States*, 350 F. Supp. 2d 1162, 1164 n. 3 (Ct. Int'l Trade 2004) ("underpinning much of the case law [in this area] — implicitly, if not explicitly — is a concern for the rights of assertedly aggrieved plaintiffs to seek redress in the courts"); *cf. Klein v. Adams & Peck*, 436 F.2d 337, 339 (2d Cir. 1971) (reversing a district court injunction barring plaintiff from proceeding with several court actions, asserting that plaintiff's "right to proceed in court should not be denied except under the most extreme circumstances"); *McDonald v. Piedmont Aviation*, 625 F. Supp. 762, 767 (S.D.N.Y. 1986) (denying defendant's motion to stay, court "upholds plaintiff's right to chart the course of his own litigation and to prosecute his claims in the manner of his choice").

fairness hearing is held.[48] **It would be unjust for this court to allow the statute of limitations on these claims to expire because the procedural safeguards accorded class-action settlements place these claims in a kind of limbo where the settling plaintiffs cannot yet vindicate the claims they obtained through the settlement.**

**In this vein, I note that any jurisdictional defect in the LaSala Actions (either in terms of standing or diversity jurisdiction) would be resolved if the Issuers Settlement is approved and the claims are then reassigned to the Litigation Trust. A somewhat similar situation was presented in *Ken-N.K., Inc. v. Vernon Township*.[49] In that case, plaintiffs challenging a town ordinance prohibiting topless dancing did not meet the "redressibility" requirement of Article III standing, because the relief plaintiff sought in federal court was, at that point in time, entirely contingent on the outcome of ongoing related state proceedings.[50] However, the Sixth Circuit recognized that if plaintiffs prevailed in the state court proceedings, the federal**

---

[48]     *See In re Initial Public Offering Sec. Litig.*, 226 F.R.D. at 191 (explaining the process of approving a class-action settlement).

[49]     **18 Fed. Appx. 319 (6th Cir. 2001) (not selected for publication)**. Sixth Circuit Rule 28(g) provides that, although citation to its unpublished decisions by courts and parties within its circuit is "disfavored," such an opinion can be cited if "a party believes . . . that an unpublished disposition has precedential value in relation to a material issue in a case, and that there is no published opinion that would serve as well . . . ."  U.S. Ct. of App. 6th Cir. Rule 28(g).

[50]     *See **Ken-N.K., Inc.**, **18 Fed. Appx. at 326-27.***

court would *then* be able to grant relief:

> [G]iven the extraordinary circumstances of this case, we believe that the best course of action is to stay, rather than dismiss, the plaintiffs' claims . . . [w]hile our general practice is to dismiss claims if there is no standing, in this case, it is the ongoing state court proceedings that render the plaintiffs' standing . . . uncertain. By staying the plaintiffs' claims against the state defendants until the conclusion of the state court proceedings, we ensure that, if the plaintiffs can [prevail] in the state court proceedings, there will be a federal forum available for their then-proper constitutional claims against the state defendants.[51]

Similarly, the jurisdictional concerns present in this action result entirely from the fact that the statute of limitations on the Assigned Claims expired before the Issuers Settlement could be approved or rejected, and once that process runs its course such concerns will disappear.

The interests of both the court and the public are also furthered by granting a stay (factors three and five). By preventing the loss of part of the valuable consideration exchanged in the settlement, granting a stay furthers the long-recognized public and judicial policy in favor of the settlement of disputes.[52] While

---

[51]     *Id.* at 327.

[52]     *See, e.g.*, Fed. R. Evid. 408, Advisory Committee Note (a "consistently impressive ground [for the evidence rule excluding settlement materials] is promotion of the public policy favoring the compromise and settlement of disputes"); *Bano v. Union Carbide Corp*, 273 F.3d 120, 129 (2d Cir. 2001) ("it is axiomatic that the law encourages settlement of disputes"); *cf. Anita Foundations, Inc. v. ILGWU Nat'l Retirement Fund*, 902 F.2d 185, 190 (2d Cir. 1990) ("[c]ourts are wary of disturbing settlements, because they represent

it may be true that the settling parties have in a sense created the constraints that currently impede litigation of the Assigned Claims, those constraints were part of a complex settlement.  As just noted, courts should encourage the voluntary resolution of disputes whenever possible.

For this reason, this case is easily distinguished from *Arden Way Associates v. Boesky*,[53] a case on which defendants place heavy reliance.[54]  In that case, Ivan Boesky sought a stay of civil proceedings against him, claiming that those proceedings would interfere with the terms of a plea agreement he had entered into in a related criminal case.  The court denied the stay, noting that "[i]t is plainly ludicrous for Mr. Boesky to argue that it is "unfair" to compel him to face the civil law suits against him which are the creations of his own alleged misconduct."[55]  Parties settling a civil lawsuit surely should not be compared to a party who the court found was attempting to "seek privileged litigating status

_____

compromise and conservation of judicial resources, two concepts highly regarded in American jurisprudence").

[53]     660 F. Supp. 1494 (S.D.N.Y. 1987).

[54]     *See* Def. Opp. at 3 (arguing that plaintiff himself created the hardship that is being used to justify a stay).

[55]     *Arden Way Assocs.,* 660 F. Supp. at 1497.

because of his own delinquencies."[56]

## B. Prejudice to Defendants

Defendants maintain that "LaSala should not be allowed to charge Defendants with unlawful conduct, force the Defendants to report to the public a threat of liability, but then deprive Defendants of the chance to address these charges promptly."[57]  However, "it does not suffice for any party — plaintiff, defendant, or otherwise — to assert . . . an inherent right [to proceed in litigation] and rest its case on that bald, abstract proposition, without articulating in concrete terms the practical, real life effects of the potential deprivation of that right under the circumstances of the particular case at bar."[58]

The only allegation of prejudice raised by defendants is the requirement that they "report to the public a threat of liability" resulting from the

---

[56]     *Id.*  I also note that the *Arden Way* court was concerned with a *plaintiff's* inherent right to proceed with its case, as opposed to a more general right of any litigant, plaintiff or defendant, to a speedy resolution.  *See id.* ("Absent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiffs should be delayed in their efforts to diligently proceed to sustain their claim.") (citation and quotation omitted); *see also* notes **46-47** and accompanying text.

[57]     Def. Opp. at 5.

[58]     *An Giang Agric.*, 350 F. Supp. 2d at 1164 n. 3.

LaSala Actions.[59]   Aside from the fact that this threat of liability would exist

whether or not the action is stayed, this claim of prejudice is somewhat insubstantial

considering that defendants have already reported a much larger potential threat of

liability in the related IPO Litigation.[60]   Moreover, if these defendants had entered

into tolling agreements, as did the vast majority of the Underwriters, the LaSala

Actions would not have been filed, thereby eliminating the need to report the

potential liability in the first place.

Finally, none of the other concerns that commonly arise when a stay is

sought are present here.  For example, this is not a case where "a litigant . . . [is]

be[ing] compelled to stand aside while a litigant in another [case] settles the rule of

law that will define the rights of both."[61]   Similarly, this stay does not delay the

Assigned Claims indefinitely.  Rather, the stay will be lifted upon approval or

rejection of the Issuers Settlement, at which time the court will resolve the remaining

motions in the LaSala Actions (*i.e.* defendants' motion to dismiss and plaintiff's

---

[59]     Def. Opp. at 5.

[60]     I express no opinion as to whether this Court would have
supplemental jurisdiction over the LaSala Actions if they were brought as cross-
claims in the IPO Litigation.

[61]     *Wing Shing Prods. Ltd. v. Simatelex Manufactory Co.*, No. 01 Civ.
1044, 2005 WL 912184, at *2 (S.D.N.Y. Apr. 19, 2005) (quoting *Landis*, 299 U.S.
at 255).

cross-motion for consolidation).[62]  Moreover, defendants have not yet incurred

significant cost or expended much effort in this action, as proceedings have barely

begun.[63]

## IV.    CONCLUSION

For the foregoing reasons, I find that the relevant factors favor

granting the stay.  Accordingly, LaSala's motion is granted.  The stay is in effect

until the court decides to approve or reject the pending settlement between the

Issuers and plaintiffs in the IPO Litigation.  The Clerk is directed to close plaintiff's

motion to stay [number 2 on the docket].  In addition, as noted above,

---

[62]     *See id.* (finding that the fact that a stay is "not of indefinite duration"
militates against a finding of prejudice to defendant opposing the stay).

[63]     *Cf. Hisler v. Galludet Univ.*, 344 F. Supp. 2d 29, 36 (D.D.C. 2004)
("[i]n balancing the equities, the court concludes that a stay would be unfair to the
defendant Gallaudet who, after five years of litigation, is finally at the second round
of dispositive motions"); *Sicoli v. Nabisco Biscuit Co.*, No. CIV. A. 96-6053, 1998
WL 614840, at *2 (E.D. Pa. Sept. 10, 1998) (court finds prejudice to defendant
from plaintiff's requested stay because, inter alia, "[d]efendant has [already]
incurred all of the costs and expense of preparing for trial in this action").

this motion governs the resolution of the identical motions brought in the other

"LaSala Actions" which are listed in Appendix I.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           August 30, 2005

**- Appearances -**

**For Plaintiff:**

Frederick Taylor Isquith, Esq.
Daniel W. Krasner, Esq.
Alexander H. Schmidt, Esq.
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue
New York, NY 10016
(212) 545-4600

**For Defendant Needham & Company:**

Sarah Schrank Gold, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY 10036
(212) 969-3000

**For Defendant J.P. Morgan Securities, Inc.**

Joseph Michael McLaughlin, Esq.
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

**For Defendant Morgan Stanley**

Brant W. Bishop, Esq.
Andrew B. Clubok, Esq.
Steven A. Engel, Esq.
Kirkland and Ellis LLP
655 Fifteenth Street NW, Suite 1200
Washington, DC 20005
(202) 879-5000

**Appendix I - Actions Covered by the Resolution of Issues in this Opinion**

**The Clerk is directed to close Plaintiff's Motion to Stay in the following actions:**

| | Case Name | Docket Sheet Number |
|---|---|---|
| 1. | LaSala (as assignee of theGlobe.com) v. J.P. Morgan Sec., 04 Civ. 8957 | 2 |
| 2. | LaSala (Fatbrain.com) v. Needham & Co., 04 Civ. 9237 | 2 |
| 3. | LaSala (Ticketmaster) v. Allen & Co., 04 Civ. 9529 | 3 |
| 4. | LaSala (Concur Techs.) v. J.P. Morgan Sec., 04 Civ. 9912 | 3 |
| 5. | LaSala (CBS Marketwatch) v. Morgan Stanley, 05 Civ. 0382 | 3 |
| 6. | LaSala (Covad Communications Group) v. J.P. Morgan Sec., 05 Civ. 0760 | 3 |
| 7. | LaSala (Perot Systems Corp.) v. Morgan Stanley, 05 Civ. 1060 | 3 |
| 8. | LaSala (Pacific Internet Ltd.) v. J.P. Morgan Sec., 05 Civ. 1553 | 3 |
| 9. | LaSala (Modem Media) v. Morgan Stanley, 05 Civ. 1554 | 3 |
| 10. | LaSala (SBCIS/Prodigy Communications) v. Prudential, 05 Civ. 1987 | 3 |
| 11. | LaSala (Verticalnet) v. J.P. Morgan Sec., 05 Civ. 1988 | 3 |
| 12. | LaSala (WebMD Corp.) v. Morgan Stanley, 05 Civ. 1989 | 3 |
| 13. | LaSala (Bottomline Tech.) v. J.P. Morgan Sec., 05 Civ. 2039 | 3 |
| 14. | LaSala (Vignette Corp.) v. Morgan Stanley, 05 Civ. 2243 | 3 |
| 15. | LaSala (Intraware) v. J.P. Morgan Sec. 05 Civ. 2393 | 3 |
| 16. | LaSala (iVillage, Inc.) v. J.P. Morgan Sec., 05 Civ. 2983 | 2 |
| 17. | LaSala (AutoWeb.com) v. Morgan Stanley, 05 Civ. 3167 | 2 |
| 18. | LaSala (Autobytel.com) v. Morgan Stanley, 05 Civ. 3222 | 3 |
| 19. | LaSala (Critical Path) v. J.P. Morgan Sec., 05 Civ. 3322 | 2 |
| 20. | LaSala (Ziff-Davis) v. J.P. Morgan Sec., 05 Civ. 3389 | 3 |
| 21. | LaSala (Priceline.com) v. Morgan Stanley, 05 Civ. 3390 | 3 |
| 22. | LaSala (Extreme Networks) v. Morgan Stanley, 05 Civ. 3649 | 5 |
| 23. | LaSala (Net Perceptions) v. J.P. Morgan Sec., 05 Civ. 4075 | 3 |
| 24. | LaSala (Marimba) v. Morgan Stanley, 05 Civ. 4267 | 3 |
| 25. | LaSala (Portal Software) v. J.P. Morgan Sec., 05 Civ. 4431 | 3 |
| 26. | LaSala (Radio One) v. Prudential Equity Group, 05 Civ. 4474 | 3 |
| 27. | LaSala (TheStreet.com) v. J.P. Morgan Sec., 05 Civ. 4573 | 3 |
| 28. | LaSala (Copper Mountain Networks) v. Morgan Stanley, 05 Civ. 4659 | 3 |
| 29. | LaSala (Alloy Online) v. Prudential Equity Group, 05 Civ. 4682 | 3 |
| 30. | LaSala (Redback Networks) v. Morgan Stanley, 05 Civ. 4762 | 2 |
| 31. | LaSala (Brocade Communications) v. Morgan Stanley, 05 Civ. 4955 | 3 |
| 32. | LaSala (F5 Networks) v. J.P. Morgan Sec., 05 Civ. 5291 | 3 |
| 33. | LaSala (High Speed Access Corp.) v. J.P. Morgan Sec., 05 Civ. 5292 | 3 |
| 34. | LaSala (Openware Servs.) v. J.P. Morgan Sec., 05 Civ. 5506 | 3 |
| 35. | LaSala (Overture Servs.) v. J.P. Morgan Sec., 05 Civ. 5665 | 3 |
| 36. | LaSala (Ariba) v. Morgan Stanley, 05 Civ. 5858 | N/A |

| | Case Name | Docket Sheet Number |
|---|---|---|
| 37. | LaSala (Cybersource) v. J.P. Morgan Sec., 05 Civ. 5859 | N/A |
| 38. | LaSala (Juniper Networks) v. J.P. Morgan Sec., 05 Civ. 5877 | 3 |
| 39. | LaSala (Stamps.com) v. Prudential Equity Group, 05 Civ. 5878 | 3 |
| 40. | LaSala (E-Loan) v. J.P. Morgan Sec., 05 Civ. 6019 | 3 |
| 41. | LaSala (AskJeeves) v. Morgan Stanley, 05 Civ. 6172 | 3 |
| 42. | LaSala (Primus Knowledge Solutions) v. J.P. Morgan Sec. 05 Civ. 6173 | 3 |
| 43. | LaSala (Axeda Systems) v. Prudential Equity Group, 05 Civ. 6454 | 3 |
| 44. | LaSala (Paradyne Networks) v. J.P. Morgan Sec., 05 Civ. 6455 | 3 |
| 45. | LaSala (Audible) v. J.P. Morgan Sec., 05 Civ. 6456 | 3 |
| 46. | LaSala (Drugstore.com) v. Morgan Stanley, 05 Civ. 6625 | 3 |
| | | |
| 47. | LaSala (NexPrise) v. Morgan Stanley, 05 Civ. 6626 | 3 |
| 48. | LaSala (Net2Phone) v. Morgan Stanley, 05 Civ. 6627 | 3 |
| 49. | LaSala (Internet Initiative) v. Morgan Stanley, 05 Civ. 6916 | 3 |
| 50. | LaSala (Fair Isaac) v. J.P. Morgan Sec., 05 Civ. 7099 | 3 |
| 51. | LaSala (Red Hat) v. J.P. Morgan Sec., 05 Civ. 7135 | 3 |
| 52. | LaSala (Silverstream Software) v. Morgan Stanley, 05 Civ. 7246 | 3 |
| 53. | LaSala (Agile Software) v. Morgan Stanley, 05 Civ. 7353 | 3 |
| 54. | LaSala (Lionbridge Techs.) v. Prudential Equity Group, 05 Civ. 7354 | 3 |
| 55. | LaSala (Wink Communications) v. J.P. Morgan Sec., 05 Civ. 7364 | 3 |