UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                        :
JOSEPH P. LASALA, as assignee of   :
Fatbrain.com, Inc.,              :
                        :      __OPINION AND ORDER__
                        :
            **Plaintiff,**    :      04 Civ. 9237 (SAS)
                        :
   - against -             :
                        :
NEEDHAM & COMPANY, INC.,     :
J.P. MORGAN SECURITIES, INC., and :
MORGAN STANLEY,         :
                        :
           **Defendants.**   :
------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

I.     **BACKGROUND**

     A.    **Prior Proceedings**

           In an Opinion and Order dated August 30, 2005 ("August 30

Opinion"), I stayed this action until resolution of a pending partial settlement

between the class of plaintiff investors and the issuer defendants ("Issuers") in the

hundreds of coordinated securities actions known as *In re Initial Public Offering

Securities Litigation* ("the IPO Litigation").[1]  In the IPO Litigation, investors seek

---

     [1]    *See generally LaSala v. Needham & Co.*, No. 04 Civ. 9237, 2005 WL
2094938 (S.D.N.Y. Aug. 30, 2005).

recovery for securities fraud against numerous underwriters and issuers of stock,

pursuant to the Securities Act of 1933 and the Securities Exchange Act of 1934.[2]

This Court preliminarily approved the partial settlement in February 2005.[3]  As

part of this partial settlement, the Issuers agreed to assign their interest in all claims

against the Underwriters for "Excess Compensation" to a Litigation Trust, which

will be created upon final approval of the settlement and will be represented by

plaintiffs' class counsel.[4]  These claims will be referred to as the "Assigned

Claims."[5]

---

[2]     The alleged scheme is described at length in my February 19, 2003 Opinion denying defendants' motion to dismiss.  *See In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 298-321 (S.D.N.Y. 2003).  Familiarity with that Opinion is assumed.  In brief, plaintiffs allege that defendants fraudulently inflated the share prices of 310 technology stocks during and after their initial public offerings ("IPOs"), through an elaborate scheme characterized by tie-in agreements, undisclosed compensation and analyst conflicts.

[3]     *See generally In re Initial Public Offering Sec. Litig.*, 226 F.R.D. 186 (S.D.N.Y. 2005).  A fairness hearing is scheduled for April 24, 2006.  *See* Preliminary Order in Connection with Settlement Proceedings ¶ 4, *In re Initial Public Offering Sec. Litig.*, 21 MC 92 (Sept. 1, 2005) ("Preliminary Order").

[4]     *See* Stipulation and Agreement of Settlement with Defendant Issuers and Individuals ("Issuers Settlement") ¶¶ 12-14, Ex. D to 2/10/04 Declaration of Steven A. Engel, counsel to Morgan Stanley ("Engel Decl.") at 17-19.

[5]     The Issuers retain their claims against the Underwriters for underpricing, contribution, indemnification, or antitrust violations, but agree that they will not assert such claims except in certain defined circumstances. *See* Issuers Settlement ¶ 1(c).

Of the fifty-five Underwriters named as defendants in the IPO Litigation, almost all have entered into agreements with plaintiffs which toll the applicable statute of limitations for the Assigned Claims until the Issuers Settlement is approved.[6]  To ensure that the statute of limitations on the Assigned Claims does not expire,[7] the plaintiffs and the Issuers have arranged to assign each Issuer's Assigned Claims against the non-tolling Underwriters to Joseph LaSala, who will (subject to court approval) become the Litigation Trustee once the Issuers Settlement is approved.[8]  These assignments are conditional and for an extremely limited purpose, giving LaSala the power to do only two things: 1) file a separate

---

[6]     *See* 4/13/05 Hearing Transcript at 25-26.  The Underwriters who have not consented to a tolling agreement are J.P. Morgan Securities, Inc., Needham & Company, Inc., Morgan Stanley, Allen & Company, Inc., E*TRADE Securities, and Prudential Equity Group, LLC.

[7]     New York has a six-year statute of limitations for breach of contract and unjust enrichment claims.  *See Francis v. Blaikie Group*, 372 F. Supp. 2d 741, 744 n. 6 (S.D.N.Y. 2005) (breach of contract, citing N.Y. C.P.L.R. § 213(2)); *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 518 (2d Cir. 2001) (unjust enrichment, citing N.Y. C.P.L.R. § 213(1)).  The statute of limitations for breach of fiduciary duty depends on whether the plaintiff seeks equitable relief (six years) or monetary relief (three years).  *See Cooper v. Parsky*, 140 F.3d 433, 440-41 (2d Cir. 1998).  New York law applies to the Assigned Claims by virtue of a choice-of-law provision in the Underwriting Agreement that is at the heart of the claims.  *See* Computer Literacy, Inc. Common Stock Underwriting Agreement dated November 19, 1998 ("Underwriting Agreement") at 20-21 (section 16), Ex. A to Engel Decl.

[8]     *See* Stipulation and Order Governing All Present and Future "LaSala" Actions ("LaSala Stip") at 2.

action for each Issuer who has assigned claims to him; and 2) immediately seek a stay of that action.[9]

In accordance with his conditional assignments, LaSala has filed dozens of separate actions in this Court ("LaSala Actions"), along with a contemporaneous motion to stay each action.[10] Each action is the result of a conditional assignment of claims from a different Issuer, and each action names as defendants one or more of the non-tolling Underwriters. LaSala has filed each action shortly before the six-year anniversary of the IPO of the assignor-Issuer for that action (to avoid expiration of the statute of limitations), and defendants have filed a motion to dismiss in each action.[11]

As already noted, I granted LaSala's motion to stay in the August 30

---

[9]  *See* Conditional Assignment of Claims between Joseph LaSala and Issuer-defendant Fatbrain.com's successor-in-interest, Barnesandnoble.com, entered into November 15, 2004 ¶¶ 4-6 ("Conditional Assignment"), Ex. 2 to 11/19/04 Affidavit of Alexander H. Schmidt, counsel for LaSala ("Schmidt Aff.") at 1-2. If LaSala acts beyond the scope of his assignment, or on the occurrence of one of several specified events, the claims automatically revert to the assignor-Issuer, or to the Litigation Trust after approval of the Issuers Settlement. *See* Conditional Assignment ¶¶ 5-6; *see also LaSala*, 2005 WL 2094938, at *1 n.10.

[10]  *See* Appendix I for a list of pending LaSala Actions.

[11]  *See LaSala*, 2005 WL 2094938, at *2.

Opinion.[12]  Pursuant to a stipulation between the parties,[13] that Opinion had the

effect of staying proceedings in fifty-four other cases currently pending in this

Court, as well as future cases raising materially identical issues.[14]  I granted the

stay because the interests of the prospective beneficiaries of the Litigation Trust in

preserving a potentially valuable benefit of the Issuer Settlement outweighed the

claims of prejudice asserted by defendants.[15]  I wrote that "[i]t would be unjust for

this court to allow the statute of limitations on these claims to expire because the

procedural safeguards accorded class-action settlements place these claims in a

kind of limbo where the settling plaintiffs cannot yet vindicate the claims they

obtained through the settlement."[16]

　　　But a countervailing consideration exists which favors considering

defendants' pending, and fully briefed, motion to dismiss now.  Hundreds of

thousands of settlement class members are about to receive notice of the

---

[12]　　*See id.* at *6.

[13]　　*See* LaSala Stip ¶¶ 1-2; *see also* Appendix I for a list of cases governed by this Opinion.

[14]　　*See LaSala*, 2005 WL 2094938, at *6, Appendix I.

[15]　　*See id.* at *4.  I also held that the interests of the public and of the courts favored a stay because, in this unique situation, a stay advances the long-standing public and judicial policy of encouraging settlements.  *See id.* at *5.

[16]　　*Id.* at *4.

complicated terms of the Issuers Settlement, in advance of the March 24, 2006 deadline to either opt-out or object to that settlement.[17]  A timely evaluation of the true worth of the Assigned Claims is important for the decision-making process of settlement class members.  And the pending fully-briefed motion to dismiss provides a vehicle by which that evaluation can be provided.[18]

As with the August 30 Opinion, although this Opinion will discuss only the facts of *LaSala (as assignee of Fatbrain.com) v. Needham & Co.*, the parties have stipulated that this Opinion will govern the resolution of the parallel motions to dismiss pending in the other LaSala Actions.[19]

---

[17]     *See* Preliminary Order ¶¶ 7-13 (provisions for timing of notice to settlement class members); *see also id*. ¶ 15 (setting the opt-out/objection deadline).

[18]     It should be noted that LaSala obtained permission from the Issuers to defend the motion to dismiss.  *See* 4/19/05 Letter from Jack C. Auspitz, liaison counsel for IPO Litigation Issuers, to the court, Ex. A to 6/3/05 Declaration of Steven A. Engel, Esq., counsel to Morgan Stanley, at 1(informing the court that "the Issuers [including Fatbrain] who have conditionally assigned claims to Joseph LaSala, the Litigation Trustee, will not assert that the conditional assignments are void if Your Honor rules on the motions to dismiss pending in several of the actions brought by LaSala before your Honor rules on the motions to stay these claims.").

[19]     *See generally* LaSala Stip; *see also LaSala*, 2005 WL 2094938, at *2.
One LaSala Action will not be governed by this Opinion.  *LaSala (as assignee of Conexant.com) v. E\*TRADE Securities, Inc.*, 05 Civ. 5869, involves an Underwriter that did not sign the Stipulation.  Defendant E\*TRADE moved to dismiss that action on September 12, 2005, incorporating by reference the

**B.  Background of the Fatbrain.com LaSala Action**

Joseph LaSala is a New Jersey resident, who had no connection to the events giving rise to the Complaint's allegations prior to receiving his assignment.[20]  The assignor of these claims, Fatbrain.com ("Fatbrain"), was "an online retailer of information resources focused on the technical professional."[21] At the time of its IPO, Fatbrain was a Delaware corporation.[22]

The defendants are three of the non-tolling Underwriters, with whom Fatbrain entered into a "firm commitment underwriting" on or about November 20, 1998.[23]  Needham & Co., Inc. was a co-lead managing underwriter for the Fatbrain IPO, receiving and reselling Fatbrain stock as part of that offering.[24]  J.P. Morgan

---

arguments made by defendants in the other LaSala Actions, and making additional factual and legal arguments specific to E*TRADE.

[20]    *See* First Amended Complaint ("Complaint") ¶ 5.

[21]    *Id.* ¶ 11.  Fatbrain was previously known as Computer Literacy, Inc., and has since been acquired by BarnesandNoble.com LLC.  *See id.*

[22]    *See* Underwriting Agreement at 1.

[23]    *See* Complaint ¶12.  A firm commitment underwriting takes place when the underwriters purchase the securities directly from the issuer, and then resell the securities to investors.  Accordingly, even if the underwriters had failed to sell the stock, Fatbrain would still receive the agreed-upon sum for the shares. *See In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d at 309 n. 30 (describing a firm commitment underwriting).

[24]    *See* Complaint ¶ 6.

Securities, Inc. and Morgan Stanley were also members of the underwriting syndicate for the IPO.[25]  All three defendants are Delaware corporations, with principal executive offices in New York City.[26]  LaSala invokes this court's jurisdiction on the basis of diversity of citizenship between himself (New Jersey) and the defendants (Delaware-registered corporations principally doing business in New York).[27]

As part of the underwriting agreement, defendants contracted to buy three million shares, which they would then sell to investors in an IPO.[28] According to LaSala, the prospectus for the Fatbrain IPO provided that the underwriters were entitled to receive "certain disclosed underwriting discounts and

---

[25]     *See id.* ¶¶ 7-8.

[26]     *See id.* ¶¶ 6-8.

[27]     *See id.* ¶ 9.  LaSala advances an alternative theory of jurisdiction, asserting that supplemental jurisdiction can be exercised over these New York claims because the claims should be considered "assigned-cross claims" of the Issuers, based on a common nucleus of operative fact with the federal securities claims in the IPO Litigation.  *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss and in Support of Plaintiff's Cross-Motion for Consolidation ("Pl. Opp.") at 5-11, 15; *see also* Plaintiff's Reply Memorandum of Law in Further Support of Plaintiff's Cross-Motion for Consolidation at 1-5.  In light of the resolution of issues in this Opinion, the Court need not address this argument.

[28]     *See* Complaint ¶ 12.

commissions of $0.70 per share."[29]

LaSala alleges that defendants also received "Excessive Compensation" for the performance of the underwriting agreement, as a result of agreements extracted from their customers who purchased Fatbrain shares from the Underwriters on the IPO and in the aftermarket.  Specifically, LaSala alleges that defendants' customers were forced to "kick back" a portion of the profits they derived through participation in the IPO through: 1) payment of inflated brokerage commissions; 2) transactions in unrelated securities made through or at the direction of a defendant to generate commissions; and 3) purchases of, and payments of commissions for, stock in future offerings underwritten by one or more of the defendants, including "follow-on" offerings of Fatbrain stock.[30]  Based on these allegations, LaSala pleads three causes of action — breach of contract, unjust enrichment, and breach of fiduciary duty.[31]

Defendants first question LaSala's standing, arguing that his

_____

[29]    *Id.* ¶ 17.  No party has provided the Court with a copy of the prospectus.

[30]    *See id.* ¶ 14.

[31]    *See id.* ¶¶ 16-21, 22-27, 28-31.

assignment did not convey a sufficient personal interest in the Assigned Claims.[32] Defendants also argue that this court lacks diversity jurisdiction, both because Fatbrain (a non-diverse party) should be considered the real party in interest, and because the assignment to LaSala should be considered a collusive assignment made solely to create diversity jurisdiction.[33]

Faced with a motion to dismiss raising both 12(b)(1) and 12(b)(6) grounds, I would normally consider the defendants' jurisdictional challenges before turning to the legal sufficiency of plaintiff's claims. However, as I noted in the August 30 Opinion, the possible jurisdictional defects of the Assigned Claims at this juncture are a product of the unique procedural posture of the LaSala Actions as they relate to the IPO Litigation.[34] For this reason, and in light of the pressing need to convey accurate information to class members regarding the value of the pending settlement, I will assume without deciding that I have jurisdiction over this action, and proceed to the merits.[35]

---

[32]     *See* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Mem.") at 7-10.

[33]     *See id.* at 10-14.

[34]     *See LaSala*, 2005 WL 2094938, at *4.

[35]     *See Securities Investor Protection Corp. v. BDO Seidman*, 222 F.3d 63, 69 (2d Cir. 2000) (court assumes without deciding that plaintiff has standing, then proceeds to dismiss claims on Rule 12(b)(6) grounds); *see also Padavan v.*

## II.    LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss should be granted only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[36] The task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."[37] When deciding a motion to dismiss, courts must accept all factual allegations in the complaint as true, and draw all reasonable inferences in plaintiffs' favor.[38] Courts generally do not consider matters outside the pleadings but may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to

---

*United States*, 82 F.3d 23, 25 (2d Cir. 1996) (court assumes without deciding that plaintiff has standing, then affirms Rule 12(b)(6) dismissal); *Rowland v. Hildreth*, No. 92 Civ. 6140, 1993 WL 287646, at *9 n.1 (S.D.N.Y. July 27, 1993) (court assumes without deciding that it has subject-matter jurisdiction, before disposing of pro se prisoner's claims on Rule 12(b)(6) grounds).

[36]    *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

[37]    *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir. 2004) (quotation and citation omitted).

[38]    *See Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 30 (2d Cir. 2004) (citation omitted).

the pleadings.[39]

## III.   DISCUSSION

### A.   Breach of Contract

"To prevail on a claim for breach of contract under New York law, a plaintiff must prove (1) the existence of an agreement between the plaintiff and defendant; (2) due performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages resulting from the breach."[40] Defendants challenge the Complaint's sufficiency regarding the last two elements, claiming that LaSala has not identified any provision of the underwriting agreement that was breached, and that the terms of LaSala's assignment do not allow him to assert any theory of damages, given that Fatbrain retained any claims based on underpricing of the IPO.[41]

The New York Court of Appeals has recently considered a very

---

[39]    *See Chambers v. Time Warner Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d at 331.

[40]    *Clalit Health Servs. v. Israel Humanitarian Found.*, — F. Supp. 2d —, No. 02 Civ. 6552, 2005 WL 2095281, at *4 (S.D.N.Y. Aug. 31, 2005) (quotation and citation omitted).  *Accord Furia v. Furia*, 498 N.Y.S.2d 694, 695 (2d Dept. 1986).

[41]    *See* Def. Mem. at 16-21.

similar breach of contract claim.[42]  In that case, the successor-in-interest to eToys,

a bankrupt issuer, sued Goldman Sachs, the lead managing underwriter for its IPO,

alleging five separate causes of action: breach of fiduciary duty, breach of contract,

fraud, professional malpractice and unjust enrichment.[43]  The underwriting

agreement called for a firm commitment underwriting, where Goldman Sachs

would buy the shares from the issuer and then "offer the shares for public sale

upon the terms and conditions set forth in the prospectus."[44]

The gravamen of plaintiff's allegations was that, although Goldman

bought the shares and sold them on the public market as agreed, Goldman also:

> [E]ntered into arrangements whereby its customers were obligated
> to kick back to Goldman a portion of any profits that they made
> from the sale of eToys securities subsequent to the initial public
> offering.  Because a lower IPO price would result in a higher profit
> to these clients upon the resale of the securities and thus a higher
> payment to Goldman Sachs for the allotment, plaintiff alleges
> Goldman Sachs had an incentive to advise eToys to underprice its
> stock.  As a result of this undisclosed scheme, Goldman Sachs was
> allegedly paid 20% to 40% of the clients' profits from trading the
> eToys securities.[45]

---

[42]   *See EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11 (2005).

[43]   *See id.* at 16.

[44]   *Id.* at 17.

[45]   *Id.* at 18 (quotation omitted).

The Court of Appeals upheld a lower court's dismissal of the breach of contract claim, because "[i]t is undisputed that Goldman Sachs fulfilled its commitments as set forth in the parties' contract, purchasing all of the available shares . . . and reselling them to the public at the initial offering price [specified in the underwriting agreement]."[46]  For this reason, *EBC I* is fully dispositive of LaSala's breach of contract claim, as LaSala cannot and does not allege that defendants failed to provide Fatbrain with the benefits of the underwriting agreement, which was to buy the prescribed number of shares and sell them at the agreed-upon offering price.

The closest LaSala comes to identifying a specific provision of the underwriting agreement that was breached is when he asserts that the agreement incorporates by reference the terms of the prospectus, which provides that the Issuer "was entitled to receive all of the proceeds of the IPO net of certain disclosed underwriting discounts and commissions."[47]  But even if this amounts to a breach, LaSala fails to allege that such a breach damaged Fatbrain.[48]  Moreover,

------

[46]    *Id.* at 22.

[47]    Pl. Opp. at 16.

[48]    *See EBC I*, 5 N.Y. at 22.

*EBC I* would compel the same result even if LaSala could allege underpricing.[49]

Finally, as part of his breach of contract claim, LaSala also asserts that "Fatbrain-Underwriter Defendants' receipt of Excessive Compensation also breached their duties of good faith and fair dealing."[50] Under New York law, "[i]n every contract there is an implied covenant of fair dealing and good faith."[51] "This covenant embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"[52] But LaSala cannot plead such a claim because, as already noted, the Underwriters' alleged receipt of excessive compensation from investors did not frustrate the stated purposes of the Fatbrain underwriting agreement.[53]

---

[49] *See id.* at 18 (eToys' allegations included damage resulting from underpricing).

[50] Complaint ¶ 20.

[51] *Reuben H. Donnelly Corp. v. Mark I Marketing Corp.*, 893 F. Supp. 285, 290 n.1 (S.D.N.Y. 1995) (citing *River Bank of Am. v. Daniel Equities Corp.*, 624 N.Y.S.2d 287, 289 (3d Dept. 1995)).

[52] *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002) (quoting *Dalton v. Educational Testing Serv.*, 87 N.Y.2d 384, 389 (1995)).

[53] *See EBC I*, 5 N.Y.3d at 22-23 (failure to state a claim of breach of duty of good faith and fair dealing because there was no dispute that "the principal purposes of the public offering . . . were achieved as a result of Goldman Sachs' underwriting services").

**B.     Unjust Enrichment**

Under New York law, a claim of unjust enrichment requires "'(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff.'"[54]  Defendants argue that LaSala's unjust enrichment claim fails because LaSala cannot, by the terms of his assignment, allege that any unjust enrichment of defendants was at plaintiff's expense:

> The only benefit that Fatbrain conferred on the Defendants was its shares, for which it received the agreed-upon purchase price.  To say that the Defendants were unjustly enriched by receipt of these shares would require LaSala to assert a legal claim for which it has not received an assignment: that the shares were worth more than the purchase price such that it would be unjust for the Defendants to retain this additional worth.[55]

This case is indistinguishable from *Xpedior Creditor Trust.*[56]  In that case, plaintiff asserted that a defendant underwriter was unjustly enriched by the

---

[54]     *Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.*, 341 F. Supp. 2d 258, 273 (S.D.N.Y. 2004) (quoting *Golden Pac. Bancorp*, 273 F.3d at 519)).

[55]     Def. Mem. at 22.

[56]     *See Xpedior Creditor Trust*, 341 F. Supp. 2d at 273 (dismissing unjust enrichment claim).  Plaintiff does not attempt to distinguish *Xpedior Creditor Trust*.

receipt of "excessive underwriting and other compensation" from its customers in connection with Xpedior's IPO.  In dismissing the unjust enrichment claim, I noted that "Xpedior does not allege that [defendant underwriter] DLJ was enriched at its expense. To the contrary, DLJ allegedly received excess compensation from its own customers. They, not Xpedior, might have a cause of action."[57]  Moreover, Xpedior, like LaSala, did not base any of its allegations on underpricing the IPO.[58]

As the Issuers have withheld underpricing-based claims,[59] LaSala (and, prospectively, the Litigation Trust) has to some extent received nothing for something – an otherwise-viable claim is foreclosed because LaSala is prevented from alleging the only theory that may fit the facts.  Therefore, for the same reasons given in *Xpedior Creditor Trust*, LaSala's unjust enrichment claim must be dismissed.

### C.      Breach of Fiduciary Duty

--------

[57]      *Id.*

[58]      In *Xpedior Creditor Trust*, the plaintiff made a tactical decision to omit an underpricing claim, in order to avoid preemption by the federal Securities Litigation Uniform Standards Act of 1998.  "The unjust enrichment claim only makes sense if Xpedior is alleging that DLJ misled it by intentionally underpricing the IPO — in that case, the excessive underwriting fees might have been obtained at Xpedior's expense.  But Xpedior has specifically disavowed allegations of fraud in order to avoid SLUSA preemption, as is its right."  *Id.*

[59]      *See* Issuers Settlement ¶ 1(c).

Defendants assert that LaSala's breach of fiduciary duty claim is time-barred.[60] Under New York law, a breach of fiduciary duty claim carries a three-year statute of limitations when, as here, a plaintiff seeks only money damages.[61] As the Fatbrain IPO took place in 1998, LaSala's claim, brought in 2004, is far outside the statutory limitations period.[62]

LaSala attempts to defeat the statute of limitations defense with a novel argument – he urges the Court to treat his fiduciary duty claim as a cross-claim, belonging to Fatbrain, that it *could have asserted* in the IPO Litigation, where it is currently a co-defendant with the defendants in this litigation.[63] According to LaSala, as this "cross-claim" would have been timely under New York law if asserted by Fatbrain at the beginning of the IPO Litigation, LaSala's breach of fiduciary duty claim "relates back" to November 16, 2001, when the IPO Litigation commenced.[64]

---

[60]    *See* Def. Mem. at 22-24.

[61]    *See Cooper*, 140 F.3d at 440-41.

[62]    LaSala does not suggest, either through allegations in his Complaint or in his opposition to the Motion to Dismiss, that the statute of limitations should be equitably tolled due to Fatbrain's belated discovery of its cause of action.

[63]    The specific action in question is *In re Fatbrain.com, Inc. Initial Public Offering Sec. Litig.*, No. 01 Civ. 10164 (filed on November 16, 2001).

[64]    *See* Pl. Opp. at 17.

LaSala's argument consists of three propositions: 1) New York law provides that defenses or counterclaims are not time-barred if they would have been timely when plaintiff's complaint was filed;[65] 2) the relevant New York statute, C.P.L.R. section 203(d), refers only to counterclaims and defenses, but New York courts have applied it to cross-claims as well;[66] therefore 3) LaSala's claims should be deemed timely under section 203(d).[67]

But even assuming, *arguendo*, that each of these propositions is valid, there is a yawning gap in LaSala's logic between the first two propositions and the last, which he makes no attempt to bridge. Specifically, LaSala does not cite a single case, and I have found none, where a plaintiff asserted a claim that was deemed to be a cross-claim based only on the fact that a separate party in separate (and still-active) litigation *could have but has not* asserted the claim as a cross-claim. Accordingly, LaSala's breach of fiduciary duty claim is time-barred and

---

[65]     *See id.* LaSala cites N.Y. C.P.L.R. § 203(d), which provides in pertinent part that "a defense or counterclaim is not barred if it was not barred at the time the claims asserted in the complaint were interposed . . . ."

[66]     *See* Pl. Opp. at 18 (citing, *inter alia*, *Alvarez v. Attack Asbestos, Inc.*, 731 N.Y.S.2d 431, 433 (1st Dept. 2001)).

[67]     *See id.*

must be dismissed.[68]

### D.    Leave to Amend

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave
to amend a complaint "shall be freely granted when justice so requires."[69]
Moreover, "[i]t is the usual practice upon granting a motion to dismiss to allow
leave to replead."[70]  Plaintiff is therefore granted leave to replead within twenty
days of this Opinion and Order.

---

[68]    Although the parties did not brief the merits of LaSala's breach of
fiduciary duty claim, such a claim is properly alleged under New York law "where
the complaining party sets forth allegations that, apart from the terms of the
contract, the underwriter and issuer created a relationship of higher trust than
would arise from the underwriting agreement alone." *EBC I*, 5 N.Y.3d at 20.  *Cf.*
*Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.*, No. 02 Civ. 9149,
2005 WL 1837960, at *6 (S.D.N.Y. Aug. 2, 2005) (denying defendant
underwriter's summary judgment motion on breach of fiduciary duty claim, when
"[issuer plaintiff Xpedior] has produced substantial evidence that Xpedior's
management relied on [its underwriter] to advise Xpedior and act in Xpedior's best
interests in underwriting its IPO and setting the IPO price.").  LaSala's Complaint
contains similar allegations. *See* Complaint ¶ 29 ("Fatbrain relied on [defendants']
superior knowledge and expertise in connection with the IPO, and provided them
with highly sensitive confidential and proprietary information.").  Thus, if the
claim was not time-barred it could survive.

[69]    Fed. R. Civ. P. 15(a).

[70]    *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.
1991).

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted without prejudice, and plaintiff's cross-motion for consolidation is denied as moot. The Clerk is directed to close defendants' motion to dismiss and plaintiff's cross-motion for consolidation [numbers 14 and 24 on the docket sheet]. The stay of this action, entered on August 30, 2005, remains in effect. Additionally, pursuant to the stipulation between the parties, the Clerk is directed to close defendants' motion to dismiss and plaintiff's cross-motion for consolidation in the other "LaSala Actions" listed in Appendix I.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            October 11, 2005

-21-

**For Plaintiff:**

Frederick Taylor Isquith, Esq.
Daniel W. Krasner, Esq.
Alexander H. Schmidt, Esq.
Wolf Haldenstein Adler Freeman & Herz LLP
270 Madison Avenue
New York, NY 10016
(212) 545-4600

**For Defendant Needham & Company:**

Sarah Schrank Gold, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY 10036
(212) 969-3000

**For Defendant J.P. Morgan Securities, Inc.**

Joseph Michael McLaughlin, Esq.
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

**For Defendant Morgan Stanley**

Brant W. Bishop, Esq.
Andrew B. Clubok, Esq.
Steven A. Engel, Esq.
Kirkland and Ellis LLP
655 Fifteenth Street NW, Suite 1200
Washington, DC 20005
(202) 879-5000

## Appendix I - Actions Covered by the Resolution of Issues in this Opinion

**The Clerk is directed to close the pending motions in the following actions:**

| | Case Name | Docket Sheet Number |
|---|---|---|
| 1. | LaSala (as assignee of theGlobe.com) v. J.P. Morgan Sec., 04 Civ. 8957 | 13, 22 |
| 2. | LaSala (Fatbrain.com) v. Needham & Co., 04 Civ. 9237 | 14, 24 |
| 3. | LaSala (Ticketmaster) v. Allen & Co., 04 Civ. 9529 | 17, 27 |
| 4. | LaSala (Concur Techs.) v. J.P. Morgan Sec., 04 Civ. 9912 | 10, 18 |
| 5. | LaSala (CBS Marketwatch) v. Morgan Stanley, 05 Civ. 0382 | 9, 16 |
| 6. | LaSala (Covad Communications Group) v. J.P. Morgan Sec., 05 Civ. 0760 | 9, 17 |
| 7. | LaSala (Perot Systems Corp.) v. Morgan Stanley, 05 Civ. 1060 | 10, 19 |
| 8. | LaSala (Pacific Internet Ltd.) v. J.P. Morgan Sec., 05 Civ. 1553 | 13, 17 |
| 9. | LaSala (Modem Media) v. Morgan Stanley, 05 Civ. 1554 | 9, 18 |
| 10. | LaSala (SBCIS/Prodigy Communications) v. Prudential, 05 Civ. 1987 | 12, 16 |
| 11. | LaSala (Verticalnet) v. J.P. Morgan Sec., 05 Civ. 1988 | 11, 19 |
| 12. | LaSala (WebMD Corp.) v. Morgan Stanley, 05 Civ. 1989 | 12, 20 |
| 13. | LaSala (Bottomline Tech.) v. J.P. Morgan Sec., 05 Civ. 2039 | 7, 14 |
| 14. | LaSala (Vignette Corp.) v. Morgan Stanley, 05 Civ. 2243 | 10, 18 |
| 15. | LaSala (Intraware) v. J.P. Morgan Sec. 05 Civ. 2393 | 11, 15 |
| 16. | LaSala (iVillage, Inc.) v. J.P. Morgan Sec., 05 Civ. 2983 | 7, 10 |
| 17. | LaSala (AutoWeb.com) v. Morgan Stanley, 05 Civ. 3167 | 7, 11 |
| 18. | LaSala (Autobytel.com) v. Morgan Stanley, 05 Civ. 3222 | 9, 13 |
| 19. | LaSala (Critical Path) v. J.P. Morgan Sec., 05 Civ. 3322 | 11, 13 |
| 20. | LaSala (Ziff-Davis) v. J.P. Morgan Sec., 05 Civ. 3389 | 8, 12 |
| 21. | LaSala (Priceline.com) v. Morgan Stanley, 05 Civ. 3390 | 9, 13 |
| 22. | LaSala (Extreme Networks) v. Morgan Stanley, 05 Civ. 3649 | 10, 14 |
| 23. | LaSala (Net Perceptions) v. J.P. Morgan Sec., 05 Civ. 4075 | N/A |
| 24. | LaSala (Marimba) v. Morgan Stanley, 05 Civ. 4267 | N/A |
| 25. | LaSala (Portal Software) v. J.P. Morgan Sec., 05 Civ. 4431 | N/A |
| 26. | LaSala (Radio One) v. Prudential Equity Group, 05 Civ. 4474 | N/A |
| 27. | LaSala (TheStreet.com) v. J.P. Morgan Sec., 05 Civ. 4573 | N/A |
| 28. | LaSala (Copper Mountain Networks) v. Morgan Stanley, 05 Civ. 4659 | N/A |
| 29. | LaSala (Alloy Online) v. Prudential Equity Group, 05 Civ. 4682 | N/A |
| 30. | LaSala (Redback Networks) v. Morgan Stanley, 05 Civ. 4762 | N/A |
| 31. | LaSala (Brocade Communications) v. Morgan Stanley, 05 Civ. 4955 | N/A |
| 32. | LaSala (F5 Networks) v. J.P. Morgan Sec., 05 Civ. 5291 | N/A |
| 33. | LaSala (High Speed Access Corp.) v. J.P. Morgan Sec., 05 Civ. 5292 | N/A |
| 34. | LaSala (Openware Servs.) v. J.P. Morgan Sec., 05 Civ. 5506 | N/A |
| 35. | LaSala (Overture Servs.) v. J.P. Morgan Sec., 05 Civ. 5665 | N/A |
| 36. | LaSala (Ariba) v. Morgan Stanley, 05 Civ. 5858 | N/A |

|  | **Case Name** | **Docket Sheet Number** |
|---|---|---|
| 37. | LaSala (Cybersource) v. J.P. Morgan Sec., 05 Civ. 5859 | N/A |
| 38. | LaSala (Juniper Networks) v. J.P. Morgan Sec., 05 Civ. 5877 | N/A |
| 39. | LaSala (Stamps.com) v. Prudential Equity Group, 05 Civ. 5878 | N/A |
| 40. | LaSala (E-Loan) v. J.P. Morgan Sec., 05 Civ. 6019 | N/A |
| 41. | LaSala (AskJeeves) v. Morgan Stanley, 05 Civ. 6172 | N/A |
| 42. | LaSala (Primus Knowledge Solutions) v. J.P. Morgan Sec. 05 Civ. 6173 | N/A |
| 43. | LaSala (Axeda Systems) v. Prudential Equity Group, 05 Civ. 6454 | N/A |
| 44. | LaSala (Paradyne Networks) v. J.P. Morgan Sec., 05 Civ. 6455 | N/A |
| 45. | LaSala (Audible) v. J.P. Morgan Sec., 05 Civ. 6456 | N/A |
| 46. | LaSala (Drugstore.com) v. Morgan Stanley, 05 Civ. 6625 | N/A |
| 47. | LaSala (NexPrise) v. Morgan Stanley, 05 Civ. 6626 | N/A |
| 48. | LaSala (Net2Phone) v. Morgan Stanley, 05 Civ. 6627 | N/A |
| 49. | LaSala (Internet Initiative) v. Morgan Stanley, 05 Civ. 6916 | N/A |
| 50. | LaSala (Fair Isaac) v. J.P. Morgan Sec., 05 Civ. 7099 | N/A |
| 51. | LaSala (Red Hat) v. J.P. Morgan Sec., 05 Civ. 7135 | N/A |
| 52. | LaSala (Silverstream Software) v. Morgan Stanley, 05 Civ. 7246 | N/A |
| 53. | LaSala (Agile Software) v. Morgan Stanley, 05 Civ. 7353 | N/A |
| 54. | LaSala (Lionbridge Techs.) v. Prudential Equity Group, 05 Civ. 7354 | N/A |
| 55. | LaSala (Wink Communications) v. J.P. Morgan Sec., 05 Civ. 7364 | N/A |
| 56. | LaSala (Netsilicon) v. J.P. Morgan. Sec., 05 Civ. 8029 | 3 |
| 57. | LaSala (Kana Software) v. J.P. Morgan Sec., 05 Civ. 8166 | NA |
| 58. | LaSala (eGain Communications) v. Prudential Equity Group, 05 Civ. 8224 | 3 |
| 59. | LaSala (Foundry Networks) v. J.P. Morgan Sec., 05 Civ. 8323 | 3 |
| 60. | LaSala (ITXC Corp.) v. J.P. Morgan Sec., 05 Civ. 8325 | 3 |
| 61. | LaSala (Tivo) v. J.P. Morgan Sec., 05 Civ. 8383 | 3 |
| 62. | LaSala (_____)v. Morgan Stanley, 05 Civ. 8385 | 3 |
| 63. | LaSala (Visiqor Solutions) v. J.P. Morgan Sec., 05 Civ. 8455 | 3 |
| 64. | LaSala (Digital Insight Corp.) v. Morgan Stanley, 05 Civ. 8456 | 3 |
| 65. | LaSala (Smartdisk Corp.) v. J.P. Morgan Sec., 05 Civ. 8547 | 2 |